[No. 17812.   Department Two.   October 11, 1923.]

WAPATO FRUIT & COLD STORAGE COMPANY, *Respondent*,
v. J. P. DENHAM, *Appellant*.[1]

SALES (105, 158)—IMPLIED WARRANTY—SEED FOR CROPS—FITNESS
FOR PURPOSE INTENDED—RIGHT TO OFF-SET IN ACTION FOR PRICE.
There is an implied warranty upon the sale of seed potatoes for
planting that they will germinate and grow, which survives the
acceptance, entitling the buyer to urge failure of consideration in
an action to recover the purchase price.

SAME (165)—BREACH OF WARRANTY—CONSEQUENTIAL DAMAGES—
DEFENSES. The purchaser of seed potatoes for planting which were
unfit for planting and would not germinate, cannot recover con-
sequential damages for loss of the crop, where he and his farmer
were experienced potato growers and discovered the defective and
diseased condition of the potatoes before they were planted, and
the farmer advised against planting them, but the purchaser had
them planted without notifying the seller of their defective
condition.

Appeal from a judgment of the superior court for
Yakima county, Holden, J., entered September 22,
1922, upon the verdict of a jury rendered in favor of
the plaintiff by direction of the court, in an action on
contract. Reversed.

*Joseph C. Cheney*, for appellant.
*Grady, Shumate & Velikanje*, for respondent.

FULLERTON, J.—In this proceeding, the Wapato
Fruit & Cold Storage Company, a corporation, as
plaintiff, sued J. P. Denham upon two causes of ac-
tion; the one to recover a balance due for the storage
of certain grain, and the other to recover the purchase
price of some seventy-five sacks of potatoes sold and
delivered by it to Denham. Denham, for answer, made
no denial of the allegations of the complaint, but set

[1]Reported in 219 Pac. 30.

up affirmatively that the plaintiff was a dealer in seed potatoes; that he approached the plaintiff for the purpose of purchasing an early variety of such potatoes for the purpose of planting on his farm; that the plaintiff recommended a variety it had, known as Early Yorks, and that on the plaintiff's recommendation that they were a good variety, sound and free from disease and would germinate and grow, purchased the same. He further alleged that he planted them in their proper season, in suitable soil, in a good and husbandman-like manner, but that the potatoes failed to grow, and that he realized nothing for his labor, lost the use of his land, and was damaged thereby in the sum of $2,410. He prayed that the plaintiff take nothing by its complaint and that he have and recover judgment against it for $2,225.70, the difference between the plaintiff's claim and the amount in which he was damaged because of the claimed breach of contract.

The cause started as a trial before the court sitting with a jury. The defendant, having the affirmative of the issue, assumed the burden of proof and introduced testimony in substantiation of the allegations of his answer. At the conclusion of his testimony, the court sustained a challenge to the sufficiency of his evidence to constitute a defense, and directed the jury to return a verdict in favor of the plaintiff for the amount of its demand. From a judgment entered on the verdict, Denham appeals.

The evidence on the part of appellant tended to show that he owned a farm in the vicinity of the respondent's place of business which was under the charge of one Du Puis. Desiring to plant some eight and one-half acres of his land to an early variety of potatoes, he went to appellant and made known his desire. The appellant, through an agent in charge

of its business, showed him some three varieties of early potatoes, telling him that either variety would be suitable for his purpose. A selection was finally made of a variety known as Early Yorks. These were then in sacks, and a number of the sacks were opened and the potatoes examined; the potatoes on inspection appearing to be sound and firm and of a good quality. The agent told the appellant where the potatoes had been grown, and told him also that the grower had recommended them as good seed potatoes. He also told him that they had been examined by another potato grower, who had at one time acted as county agricultural agent, and had been pronounced by him to be good seed potatoes. It was estimated that some seventy-five sacks of the potatoes were necessary to plant the ground the appellant desired to plant, and a contract for the purchase of that number was entered into.

Sometime later Du Puis, the appellant's farmer, went to the warehouse of the plaintiff for the potatoes and seventy-five sacks were delivered to him which he hauled to the appellant's farm. Du Puis was an experienced farmer and an experienced potato grower. In preparing the potatoes for planting he discovered that a quantity of them had decayed, and a quantity which he estimates as equal to five sacks, he threw away entirely. On cutting the others into suitable sizes for planting, he discovered that a large quantity of them were diseased and in the process of decay. This quantity he estimated as three-fourths of the whole. Du Puis, as an experienced potato grower, concluded the potatoes were unfit for planting, and before doing so called the appellant upon the telephone, told him of their condition, and advised him not to plant them. He testifies that the appellant told him to plant

them despite their condition, as the respondent had guaranteed them. The potatoes were then planted, but failed to grow. The testimony is that only about one-fourth of them came through the ground, and of these a large proportion were sickly looking and died on the first application of water put on the land for irrigating purposes. No further attempt was made to cultivate the remainder, and no crop was produced of any value.

The evidence is that the respondent was not informed of the defective condition of the potatoes until after they were planted and had failed to germinate. It is in evidence also that the respondent had no knowledge of their defective condition, either at the time the contract for their sale was entered into or at the time of their delivery. The agent selling the potatoes, who was called as a witness by the appellant, testified that an inspection of them did not disclose any defect in their condition; that, when they were first purchased from the grower, he had taken some of them to his house for eating, and had found them solid and firm throughout.

The trial judge, in passing upon the challenge to the evidence, expressed the opinion that there was no warranty on the sale of the potatoes, either expressed or implied, and that the rule of *caveat emptor* applied. He, however, rested the judgment on the conclusion that, since the appellant planted the potatoes after knowledge of their defective condition, without informing the seller of such condition and after he had been advised by his own experienced grower that they were unfit for seed, he planted them at his own risk, and cannot now complain that they were not suitable for the purpose for which he purchased them.

But we cannot agree with the conclusion of the judge in its entirety. It is a general rule that, on a sale of

seeds for planting, there is an implied warranty that the seeds are reasonably fit for the purposes for which they are intended, that they are true to name, and that they will germinate and grow. *Kelly v. Lum,* 75 Wash. 135, 134 Pac. 819, 49 L. R. A. (N. S.) 1151; *Shatto v. Abernethy,* 35 Minn. 538, 29 N. W. 325; *Wolcott, Johnson & Co. v. Mount,* 38 N. J. L. 496; *Johnson v. Sproull,* 50 Mo. App. 121.

See, also, note to *Leonard Seed Co. v. Crary Canning Co.,* 147 Wis. 166, 132 N. W. 902, 37 L. R. A. (N. S.) 79.

In this instance, we think the facts were such as to justify an implied warranty. The purchaser made known to the seller the purpose for which he desired the potatoes, and when the seller sold him potatoes for that purpose, a warranty arose from the circumstances of the sale. And, since the sale was executed, the warranty survived the acceptance of the potatoes. *Grisinger v. Hubbard,* 21 Idaho 469, 122 Pac. 853, Ann. Cas. 1913E 87.

These considerations lead to the conclusion that the trial court was in error in holding that there could be no offset against the purchase price. The potatoes being worthless for the purposes for which they were purchased, there was at least a partial failure of consideration which the purchaser could urge in an action brought against him to recover the purchase price. Nor do we think the form of the pleading changed the situation. The pleading was in its effect a plea of failure of consideration as well as a claim of consequential damages, and was treated by the parties themselves as raising the issue. The trial court, therefore, should have given it the same effect, or should have directed a trial amendment.

But we think the appellant's conduct barred a recovery of any consequential damages. The appellant had

knowledge before planting the potatoes that they were diseased and unfit for planting. He knew, moreover, that the seller had no such knowledge, and he planted the potatoes without informing it of the fact. Had he so informed the seller, the seller would have had an opportunity to mitigate the damages. Having been given no such opportunity, it would be a harsh rule to hold it liable for the damages ensuing because of the failure of the expected crop. The question was presented in *Oliver v. Hawley*, 5 Neb. 439. Speaking for the court, Justice Maxwell said:

"In *Passinger v. Thorburn*, 34 N. Y. 634, the defendant sold cabbage seed under an express warranty that it was the seed of a variety known as 'Bristol cabbage,' which it proved not to be. The damages were held to be the value of a crop such as should have been produced by the seed if it had conformed to the warranty, deducting the expense of raising the crop and the value of the one in fact raised.

"But I think no case can be found in which consequential damages have been recovered where a party, as in this case, had knowledge of the inferior character of the seed before sowing the same; in such case, the party furnishing the seed is not liable for damages resulting to either the crop or the land in consequence of the use of such inferior seed."

The judgment of the trial court is reversed and the cause remanded for further proceedings.

MAIN, C. J., TOLMAN, PARKER, and PEMBERTON, JJ., concur.