LANDRY, Judge.
This suit, an action for the balance due on an open account, was defended on the ground some of the merchandise, (ceramic floor tile and the glue or adhesive required for its installation), was defective. Sale and delivery of the goods are not contested and defendant purchaser likewise concedes *432 the unpaid balance on the account is the sum of $1,190.00. Defendant reconvened for the sum of $500.00 allegedly spent in replacing some of the defective tiles. After trial of the case below, plaintiff filed a peremptory exception of one-year prescription in bar of defendant’s reconventional demand. The lower court rendered judgment in favor of plaintiff as prayed for but failed to rule upon plaintiff’s aforementioned peremptory exception. Defendant has appealed and while plaintiff has neither appealed nor answered respondent’s appeal, appellee has, however, reurged its peremptory exception before this court.
The record discloses that defendant Henry P. Mercante, is a contractor engaged in the business of installing various kinds of floors and floor coverings, operating under the trade name Mercante Floor Covering. From time to time he purchased on open account from plaintiff, Charters Company, Inc., tile and other floor materials aggregating in excess of $2,700.00, on which account certain payments and credits were made, leaving a balance due in the sum of $1,190.00, which defendant refused to pay.
During the year 1960, appellant’s brother, Vincent J. Mercante, entered into a contract with their father, Frank Mercante, a general contractor, pursuant to which the father undertook to build a highway restaurant or drive-in for his said son, the establishment to be known as “Highway 51 Drive-In.” The father, in turn, awarded defendant, Henry J. Mercante, a sub-contract to install 806 square feet of ceramic tile on the floors and counter tops of the Drive-In at the unit price of $2.00 per square foot.
The materials for the Drive-In were purchased by appellant from appellee and within a few months of installation the tile commenced loosening in scattered areas of from one to three square feet necessitating its replacement. In short defendant maintains the failures occurred because of defective glue or adhesive while plaintiff contends the defects resulted from improper application and the fact that the tile sold was in “broken or odd lots” which contemplated tiles of varying sizes and thickness.
Defendant acknowledged the sale was of tile of “odd lots” upon the representation of plaintiff’s salesman, John G. Pusateri, that broken or odd lot materials could be utilized for the Drive-In job and could be purchased at a substantial saving to appellant. Appellant likewise concedes he agreed to purchase the “odd lot” materials which Pusateri would obtain from a dealer other than plaintiff.
The material in question was delivered to defendant in July, 1960, and installed the following September. When defendant commenced laying the tile he noted it varied in width and thickness and reported this circumstance to plaintiff. Nevertheless, appellant completed the job with the odd lot tile because as he explained, his brother had announced the opening date of the Drive-In and any delay in installing the tile would necessitate postponement of the scheduled opening. It is not disputed that within two or three months of installation the tile began to loosen in spots. As failures occurred, defendant replaced the loose tiles with others remaining from the odd lot purchased from plaintiff. Repairs were thusly made until February, 1964, one year prior to trial of this suit, at which time defendant ceased replacing the loose tile notwithstanding some failures occurred since that time. Defendant maintains he was responsible to his brother for the defective flooring and counter tops but that his said brother paid him $500.00 in cash for approximately 70 to 80 square feet of tile replaced.
Predicated upon his 18 years experience in the tile business, appellant was of the opinion the failures resulted from defective adhesive or glue. Upon examination of the floor and counter tops involved, he noted both the tile and the surfaces on which they were laid were coated with the adhesive provided by plaintiff. In his opinion if the ■ failures were due to improper surface preparation the glue would not have adhered to *433 the floor and counter tops when the tiles came loose.
Conversely, appellee showed that the tiles sold defendant were obtained in odd or broken lots from different manufacturers of which circumstance defendant was fully apprised. Plaintiff’s employee, Pusateri, testified it was contemplated that the different tiles would he used in varying rooms and different counter tops where they could be matched as to size and thickness rather than mixed indiscriminately. The only conclusion to be reached from the record is that defendant mixed the tile at random rather than attempt to assort them into uniform size and thickness for use in particular areas. This is necessarily so inasmuch as defendant testified the difference in size and thickness could not be noted until the tile was installed and a paper sheet or covering removed therefrom.
Thomas Tooker, Vice-President of plaintiff corporation, who had several years experience in the tile business, testified that tiles of different lots from different manufacturers will vary in color, dimension and thickness. He stated further that the price of odd lot tile is less than one-half the usual or ordinary cost. Tooker examined the floor and counter tops in question and concluded the failures occurred because of faulty installation. He was of the opinion the failures resulted from either applying the tile after the adhesive had reached its initial set, the application of insufficient or excessive adhesive and improper spreading thereof, the presence of grease, dust or dirt on the floor and counter top surfaces preventing proper bonding, or the permitting of traffic on the floor before the adhesive was sufficiently cured or set. In Tooker’s opinion, if the adhesive were defective as contended by defendant, the entire floor would have failed rather than in isolated patches or areas. He noted “bleeding” of adhesive through the tile joints in several areas indicating the application of an excess of adhesive. He also stated that if the adhesive is applied in recommended amount with the type of notched trowel suggested by the manufacturer, bleeding of the joints would not occur. In addition he stated that it is customary in laying tile to fill the grout joints with a mixture of sand and Portland cement after the adhesive is cured which process, if properly accomplished, would not permit the adhesive to bleed. Certain broken tiles which Tooker noted were attributed to abuse by the owner of the premises.
Appellant argues that since plaintiff did not appeal the exception of prescription urged in opposition to appellant’s recon-ventional demand, said exception may not be properly considered by this court. In view of the conclusions hereinafter reached, it is unnecessary to decide either said issue or whether defendant may rightfully claim damages in reconvention for the amount he was paid by his brother to replace the allegedly defective materials.
Although defendant received the sum of $1,612.00 for the subcontract to lay the tile (806 square feet at $2.00 per square foot), Mr. Tooker testified that said amount of tile could be laid for approximately $500.00, including both material and labor, utilizing assorted lot tile. In this manner appellee refutes appellant’s contention the amount herein sued upon represents in its entirety the balance due for tile purchased by appellant for use in the Highway 51 Drive-In job. Defendant has failed to establish that the allegedly inferior materials totalled the sum of $1,190.00 herein demanded by appellee.
 That appellant may assert alleged redhibitory vices in defense of plaintiff’s claim is clear beyond all doubt. It has been repeatedly held that, under the doctrine “quae temporalia sunt ad agendum, perpe-tua sunt ad excepiendum,” a purchaser may urge vices and defects in the merchandise sold in defense of a vendor’s action for the purchase price thereof, notwithstanding the action of redhibition has prescribed. J. B. Beaird Co. v. Burris Bros., 216 La. 655, 44 So.2d 693; Capella v. Taulli, La.App., 53 So.2d 271.
*434 It is also well settled jurisprudence that the burden of proof rests upon the buyer resisting payment on grounds of a redhibitory vice to establish the existence of such defect prior to the sale, and that such vice rendered the merchandise useless or its use so inconvenient and imperfect that it must be supposed he would not have purchased the goods had he known of its vices. Hanna Investments, Inc. v. Stovall, La.App. 171 So.2d 678; Gabriel v. Jeansonne, La. App., 162 So.2d 798; Chaignaud v. Baden, La.App., 81 So.2d 76. See also LSA-C.C. Art. 2520.
Regarding the alleged defective condition of the tile and cement in question, the evidence is not convincing. In support of defendant’s charge, appellant offered only his unconfirmed testimony. While defendant did aver that two other experienced tile men told him the adhesive was defective, he neither named them nor produced their testimony in corroboration of his own on this most vital issue. We note that sample tiles introduced in evidence by defendant do not have the appearance described by appellant regarding the bonding of adhesive thereto. Mr. Tooker ascribed the failure to improper installation which conclusion was founded upon his personal observation of the premises. Under the circumstances shown, we cannot conclude defendant has carried the burden of establishing by a fair preponderance of evidence that the fault was with the glue or adhesive furnished by plaintiff.
With respect to the alleged defective condition of the tiles arising from the variations in thickness and dimension, the record is devoid of evidence that such feature was the cause of the failures shown. It appears defendant contends such variations were of themselves such defects that he would not have purchased them had he been aware thereof. On this score the evidence is preponderately in favor of the conclusion defendant was in fact aware of the variations mentioned and chose to use such file because of the saving to be effected thereby. Moreover, it clearly appears defendant deliberately chose to use the tile knowing of such variations because he was bent upon completing the project for a certain opening date. His use of the materials under such circumstances can only be interpreted to mean that he did not consider them so defective as to be useless or that their use was so inconvenient and imperfect it must be assumed he would not have purchased them. On the contrary, appellant elected to make use of the materials with full knowledge of their precise condition.
Pertinent to the issues herein involved are the provisions of LSA-C.C. Art. 2525, as follows:
“Art. 2525. Absolute and relative vices of body
Art. 2525. The vices of body are distinguished into absolute and relative.
Absolute vices are those of which the bare existence gives rise to the redhibi-tory action.
Relative vices are those which give rise to it only in proportion to the degree in which they disable the object sold.”
Article 2543 LSA-C.C., which authorizes a reduction in price under certain circumstances, is likewise relevant to the issues posed herein. The cited article has been applied in various situations including cases involving a partial failure of consideration (Coco v. Mack Motor Truck Corp., 235 La. 1095, 106 So.2d 691), and instances wherein the buyer is unable to tender a return of the object sold (Pursell v. Kelly, 244 La. 328, 152 So.2d 36.)
In the case at bar the alleged defects, viewed most favorably from appellant’s standpoint, constitute only relative vices which might in a proper case warrant a reduction in price. Defendant, however, is not even entitled to such relief inasmuch as it conclusively appears the price charged by plaintiff for the odd lots of tile sold for the job in question was approximately half the price ordinarily paid for tile. Defendant *435 having deliberately chosen to sacrifice uniformity and quality for a bargain price may not now seemly complain of the differences which he had every reason to know would be present in the merchandise purchased.
Accordingly, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.
ELLIS, J., recused.