EDWARDS, Judge.
Louisiana Welding Supply Co., Inc. filed this suit against Gordon Crowe d/b/a Gordon Crowe & Sons to recover the balance due on an open account and on the purchase price of two welding machines. LWSC rents and sells welding equipment and supplies.
In 1980, LWSC and Crowe entered into a written open account agreement which provided for the following: (1) a one percent monthly finance charge for each unpaid purchase over thirty days past due; (2) a monthly rental charge of $2.50, subject to change without notice, for each cylinder not returned by the end of the month; (3) that the customer was liable for a cylinder’s replacement value if he lost or damaged it; and (4) 30% of the account balance as attorney’s fees if LWSC had to hire an attorney to collect the account. LWSC delivered welding supplies, including hundreds of cylinders containing oxygen or acetylene, to Crowe and was paid in accordance with their agreement.
On May 28, 1981, plaintiff sold Crowe two welding machines for $6,572.76 each. Crowe agreed to make twelve payments of $547.73 ($526.66 plus 4% tax) for each machine. He paid four payments on each for a total of $4,381.84, but refused to pay any more because the machines kept breaking down. Crowe ceased doing business with LWSC in November 1981 because of problems with the welding machines and questions concerning his open account. Crowe refused to pay the balance due on his open account because he claimed LWSC was overcharging him. After LWSC sued him, Crowe reconvened disputing the amount LWSC claimed he owed on the open account. He also sought recovery for the cost of repairing the welding machines, his lost income, and for his loss of use of the machines.
The trial court awarded LWSC $2,090.91 on the open account and rescinded the sale of the welding machines. The court ordered LWSC to return the $4,381.84 Crowe had paid on the machines and awarded defendant $3,600.00 on his reconventional demand. LWSC appeals, alleging the trial court erred in determining the amount due on the open account, in failing to uphold the terms of the agreement, in rescinding the sales of the two welding machines, and in awarding Crowe excessive damages.
OPEN ACCOUNT AGREEMENT
The first issue is whether the open account agreement between LWSC and Crowe is an enforceable contract. The record supports Gordon Crowe’s claim that his daughter, Paula Crowe, signed his name to the agreement. However, Crowe admitted the existence of the open account agreement in his Answer and in his testimony at trial. He knew that LWSC was delivering the supplies he ordered and billing him for them in accordance with the terms of the agreement. He did not contend that Paula was not authorized to sign the contract. In any event, he clearly ratified her actions by accepting the benefits of the contract for over sixteen months. See Louisiana Consumer League, Inc. v. City of Baton Rouge, 431 So.2d 35 (La. App. 1st Cir.), cert, denied, 435 So.2d 431 (La.1983). Accordingly, we find that the open account agreement is an enforceable contract and its terms should be upheld.
LWSC claimed that Gordon Crowe owed $2,309.40 on unpaid invoices for merchandise and supplies. Crowe did not deny that he owed LWSC $2,090.91. The only invoice which he disputed was Invoice #31464 which he claimed was incomplete and showed only an $8.50 charge instead of $218.49.
A copy of Invoice #31464 is in the record. It reveals that LWSC delivered ten cylinders of gas and 88 feet of wire to Crowe. It also shows a charge for $8.45 for a valve which was returned damaged. After a careful review of the record, we find that the proper charge for the cylinders of gas delivered is $120.94, the price *77 for the wire is $76.56, plus the $8.45 charge for the damaged valve, equals a total invoice charge of $214.19.[1] Accordingly, we increase plaintiff’s recovery on the open account to $2,305.10, plus twelve percent interest from the date it became due and $691.53 in attorney’s fees.
Plaintiff contends that the trial court erred in refusing to award it $901.68 in cylinder rental fees. The open account agreement provided that LWSC would charge a monthly rental fee for the number of cylinders Crowe retained at the end of each month. At the time this dispute developed, the monthly rental fee had increased to $3.00, plus 4% sales tax. LWSC proved that it was entitled to $901.68 in cylinder rental fees, however, its calculations included a charge for four cylinders which Crowe attempted to return in November of 1981. LWSC’s truck driver was unable to take these cylinders because his truck was full. Although the driver returned on five separate occasions to Crowe’s shop, he failed to pick up the four empty cylinders. Accordingly, we find that Crowe is entitled to a credit of $74.88[2] in rental charges for these cylinders. Thus, LWSC is entitled to recover $826.80 in cylinder rentals.
The terms of the open account agreement provided that the customer, Gordon Crowe, agreed to pay LWSC the replacement value of any cylinders which were lost or damaged. At trial, Gordon Crowe admitted he buried four cylinders which LWSC had failed to pick up for over two years. Clearly, he is liable under the contract for the replacement value of these cylinders, which LWSC proved to be $573.96.
RESCISSION OR REDUCTION OF PURCHASE PRICE
LWSC contends that the trial court erred in rescinding the sales of the welding machines and ordering the return of the purchase prices because Crowe only requested a reduction in the purchase price. We agree. LSA-C.C. art. 2543 states that a “purchaser who has contented himself with demanding a reduction of the price, cannot afterwards maintain the redhibitory action.” Crowe did not allege that the welding machines had redhibitory defects warranting rescission until his post-trial memorandum. We find that the trial court committed manifest error in rescinding the sales of the welding machines instead of reducing the purchase prices.
In addition, we note that Crowe’s redhibitory action was prescribed. LSA-C.C. art. 2534 states that a “redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale. This limitation does not apply where the seller had knowledge of the vice *78 and neglected to declare it to the purchaser.”
In the instant case, Crowe purchased the two welding machines on May 28, 1981. One of the machines broke down the day after the sale. The machine kept blowing its rectifier, a device that changes AC current to DC current. When the rectifier went out, the engine would run but the machine would not weld. Crowe was aware of this problem from the beginning. He returned the machines to LWSC to be repaired on eight separate occasions, the last being in November of 1981. LWSC sued Crowe on August 20, 1982. Crowe did not file his reconventional demand until May 6, 1983. Thus, even if he had asked for rescission of the sales, it would have been too late.
Although a redhibitory action is prescribed, it may be used as a defense to a suit for payment of the purchase price of the goods. D.H. Holmes Co. v. Smith, 235 So.2d 159 (La.App. 4th Cir.1970). Crowe testified that each time the machine broke down he had to send it to Baton Rouge for repairs. The round trip to Baton Rouge and back took four hours. Crowe charged $25.00 per hour for jobs using the welding machine. Accordingly, he is entitled to offset $800.00 (8 trips at 4 hours each times $25.00) from the purchase price of the machine. Crowe also proved additional damages in the amount of $459.39 to repair the machines. These repairs were apparently successful since Crowe admitted the machines were working at the time of the trial. We find that LWSC is entitled to recover $7,504.29 for the remaining purchase price of the machines ($8,763.68 — $1,259.39 = $7,504.29).
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Louisiana Welding Supply Co. and against Gordon Crowe d/b/a Gordon Crowe & Sons, for $2,305.10 on the open account, plus 12% interest per annum from the date due until paid, $691.53 in attorney's fees, $826.80 in cylinder rentals, $573.96 for the lost cylinders, and $7,504.29 for the two welding machines. Costs of this appeal to be borne by appellee.
AMENDED IN PART, REVERSED IN PART, AND AS AMENDED, AFFIRMED.

. LWSC delivered the following to Crowe:
(1) 3 LK cylinders of oxygen with a volume of 244 CF each.
3 X 244 = 732 CF. The unit price per CF was .0300. 732 X $21.96.
(2) 2 LT cylinders of oxygen with a volume of 330 CF each.
2 X 330 = 660 CF. The unit price per CF was .0300. 660 X .0300 = $19.80.
(3) 5 WSL cylinders of acetylene with a total volume of 636 CF. The unit price per CF was .1245. 636 X .1245 = $79.18.
(4) 88 feet of .035 Linde 86 wire. The unit price per foot was .87. 88 x 87 — $76.56.
The total of these charges, plus the $8.45 charge for the damaged valve, equals $214.19.

. LWSC charged Crowe $3.00 a month per cylinder, plus a 4% sales tax. The following is an itemized list of the charges:
No. of
Date Cylinders Amount
July 57 $177.84
August 58 180.96
September 57 177.84
October 41 127.92
November 20 62.40
December 20 62.40
January 20 62.40
February 6 18.72
March 5 15.60
April 5 15.60
Total $901.68
Crowe is entitled to a credit for the four cylinders he attempted to return in November. The charge per month- for the four cylinders was $12.48. Accordingly, Crowe is entitled to a credit of $74.88. Thus, Crowe owes $826.80 in unpaid cylinder rentals.